# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ZA XIONG MOUA,

Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,

Defendant.

Case No. 1:19-cv-00516-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

_______________________________________/

## I. INTRODUCTION

On April 22, 2019, Plaintiff Za Xiong Moua ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

///

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 6, 8.)

## II. FACTUAL BACKGROUND

On March 23, 2015, Plaintiff protectively filed an application for DIB payments, alleging he became disabled on December 31, 2011[2] due to depression, "waist and back pain," "sleepless[ness]," and memory loss. (Administrative Record ("AR") 200–01, 275, 362.) Plaintiff was born on May 12, 1964 and was 47 years old as of the alleged onset date. (AR 330.) Plaintiff completed some school, approximately through the ninth grade, has past work experience as an assembly worker and a self-employed farmer, and last worked full-time in approximately 2011. (AR 44, 276.)

### A. Summary of Relevant Medical Evidence

#### 1. Kings Winery Medical Clinic and North Marks Medical Clinic

Plaintiff was treated by multiple professionals, including treating psychiatrist Maximo Parayno, M.D., at Kings Winery Medical Clinic and North Marks Medical Clinic[3] from approximately 2010 through at least 2017. (*See* AR 370–521, 550–663, 700–709, 734–91.) Dr. Parayno stated in 2016 that he had seen Plaintiff approximately every four-to-six weeks since 2012. (*See* AR 728.)

On June 1, 2012, Dr. Parayno diagnosed Plaintiff with PTSD and severe major depression. (AR 385.) Dr. Parayno noted that Plaintiff had relevant thought content, but had blunted affect, poor judgment and insight, poor concentration and attention, nightmares, feelings of hopelessness/worthlessness, and poor sleep. (AR 384–85.) On July 17, 2012, Hyacintha Agina, FNP-C, noted that Plaintiff was prescribed Megace, Seroquel, Sertraline, and Theragran. (AR 378.) On August 10, 2012, Dr. Parayno noted that Plaintiff had relevant thought content and "okay" sleep, but had depressed mood, blunted affect, nightmares, feelings of hopelessness/worthlessness, and poor appetite. (AR 395–96.) On April 9, 2013, Dr. Parayno refilled Plaintiff's prescriptions for Dalmane, Megace, Seroquel, Sertraline, Theragran, and Wellbutrin. (AR 388.) Dr. Parayno noted that Plaintiff had relevant thought content and fair judgment and insight, but had blunted affect, poor concentration and attention, nightmares, feelings of hopelessness/worthlessness, and poor sleep.

[2] Plaintiff subsequently amended his alleged onset date of disability to May 11, 2014. (*See* AR 14.)

[3] The Court discusses the two clinics simultaneously as the treatment notes from the two clinics were submitted together.

(AR 387–88.) On May 28, 2013, Dr. Parayno noted that Plaintiff was on about 16 different medications for his psychological conditions and for his back pain. (AR 373–74.) Plaintiff's affect was blunted, mood was depressed, he had recurrent nightmares, flashbacks, or intrusive distressing recollection of violent images, thoughts of hopelessness and worthlessness, poor memory, and poor concentration. (AR 374–75.) Plaintiff was noted to have poor or impaired judgment and insight on at least 16 occasions between 2010–2012, including at 15 consecutive appointments at Kings Winery Medical Clinic. (*See* AR 384, 395, 406, 408, 410, 411, 413, 414, 415, 418, 420, 422, 424, 425, 427, 428, 430.)

On April 21, 2014, Nurse Agina noted that Plaintiff was alert and oriented and had no gross neurologic abnormalities. (AR 609.) On January 9, 2015, Vang Moua, PA, noted that Plaintiff was alert and oriented. (AR 601.) On January 16, 2015, PA Moua treated Plaintiff for a problem with his large intestine, and noted that Plaintiff was alert and active. (AR 598.) On February 18, 2015, PA Moua saw Plaintiff for an annual physical and noted that Plaintiff was "alert and active" and his mental status examination was "absolutely normal." (AR 589–90.) On April 28, 2015, Dr. Parayno noted that Plaintiff's affect was blunted, mood was depressed, he had feelings of hopelessness/worthlessness, memory was poor, concentration/attention was poor, and judgment and insight was fair. (AR 581.) On July 7, 2015, Dr. Parayno noted that Plaintiff had depressed mood, nightmares, feelings of hopelessness/worthlessness, poor memory, poor concentration/attention, and fair judgment and insight. (AR 702.) On November 29, 2016, Dr. Parayno noted that Plaintiff had blunted affect, depressed mood, nightmares, feelings of hopelessness/worthlessness, poor memory, fair judgment and insight, and relevant thought content. (AR 756.) On January 31, 2017, Dr. Parayno noted that Plaintiff had fair judgment and insight and relevant thought content, but had blunted affect, depressed mood, nightmares, feelings of hopelessness/worthlessness, and poor memory. (AR 752.) On April 7, 2017, Dr. Parayno noted Plaintiff had relevant thought content and fair judgment and insight, but had blunted affect, depressed mood, nightmares, feelings of hopelessness/worthlessness, and poor memory. (AR 736.)

On August 5, 2016, Dr. Parayno submitted a medical source statement on behalf of Plaintiff. (AR 728–31.) Dr. Parayno diagnosed Plaintiff with major depression and PTSD. (AR 728.) Dr.

Parayno opined Plaintiff had anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with weight change, decreased energy, thoughts of suicide, blunt, flat, or inappropriate affect, feelings of guilt or worthlessness, poverty of content or speech, mood disturbance, difficulty thinking or concentrating, recurrent or intrusive recollections of a traumatic experience, psychomotor agitation or retardation, and persistent disturbances of mood or affect. (AR 728.) Dr. Parayno opined Plaintiff was impaired to the extent it would preclude performance for 10% of the day in his ability to understand, remember, and carry out short and simple instructions, maintain attention for two hours, maintain regular attendance, sustain an ordinary routine, work in coordination with others, make simple decisions, complete a normal workday, perform at a consistent pace, ask simple questions, accept instructions, get along with coworkers, respond appropriately to changes, deal with normal work stress, be aware of normal hazards, interact appropriately with the public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and use public transportation. (AR 729–30.) Dr. Parayno opined Plaintiff was impaired to the extent it would preclude performance for 15% or more of the day in his ability to travel in unfamiliar places, understand, remember and carry out detailed instructions, set realistic goals, and deal with stress. (AR 730.) Dr. Parayno further opined Plaintiff would miss work about two days per month. (AR 731.)

**2. Theodore Georgis, Jr., M.D.**

On July 13, 2015, Plaintiff underwent an orthopedic consultative examination with orthopedic surgeon Theodore Georgis. (AR 666–670.) Dr. Georgis noted that Plaintiff complained of chronic back pain that was gradually worsening, as well as sharp pain when he lifts items. (AR 666.) Dr. Georgis noted Plaintiff's main symptoms as low back pain and difficulty bending. (AR 667.) After evaluating Plaintiff, Dr. Georgis opined that Plaintiff could:

> [L]ift and carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] can stand and walk six hours out of an eight hour day with normal breaks. [Plaintiff] can sit six hours in an eight hour day. Exertional limitations include occasional climbing, stooping, crouching, crawling, balancing and kneeling.

(AR 669.)

**3. James Murphy, Ph.D.**

On August 11, 2015, Plaintiff underwent a psychological evaluation with psychologist James Murphy. (AR 674–78.) Dr. Murphy opined that Plaintiff is "having a difficult time in his life" and his level of functioning "could not be assessed because of his lack of participation in the interview and testing session." (AR 678.) Dr. Murphy opined that Plaintiff had the ability to handle everyday activities of daily living but he "had difficulty interacting with competent fully functioning individuals and . . . was unable to maintain his composition and function appropriately during the testing session." (AR 678.) Dr. Murphy stated Plaintiff had "no difficulty understanding what was asked of him concerning the various tasks" and "did not seem to demonstrate difficulties understanding the simple instructions of the various tasks, confidentiality, or reason for the evaluation." (AR 678.) However, Dr. Murphy stated Plaintiff would require assistance in handling his money. (AR 678.) Dr. Murphy stated "[m]alingering must be considered a motive for [Plaintiff's] behavior" during the session and ended with stating, "[t]hank you for this most interesting referral." (AR 678.)

**4. State Agency Physicians**

On July 30, 2015, G. Taylor, M.D. a Disability Determinations Service medical consultant, assessed Plaintiff's physical residual functional capacity (RFC).[4] (AR 97–98.) Dr. Taylor determined that Plaintiff retained the RFC to: occasionally lift or carry 50 pounds; frequently lift or carry 25 pounds; stand, walk, and sit for about 6 hours in an 8-hour workday; push and pull to an unlimited extent; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and occasionally climb ladders, ropes, and scaffolds. (AR 97–98.) Upon reconsideration, on December

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

2, 2015, another Disability Determinations Service medical consultant, A. Khong, M.D., affirmed some of Dr. Taylor's findings, but found that Plaintiff could only occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds; had an unlimited ability to balance and kneel, and could frequently climb ladders, ropes, and scaffolds.  (AR 116–17.)

On July 20, 2015, Brady Dalton, Psy.D., a Disability Determinations Service medical consultant, assessed Plaintiff's mental RFC.  (AR 99–100.) Dr. Dalton opined that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, complete a normal workday without interruptions from psychologically based symptoms, and respond appropriately to changes in the work setting, and had no limitations in any other functional area.  (AR 99–100.)

Upon reconsideration, on November 27, 2015, another Disability Determinations Service medical consultant, G. Yanagi, Ph.D., affirmed Dr. Dalton's findings as to Plaintiff's mental RFC, except that Dr. Yanagi found Plaintiff was moderately limited in his ability to set realistic goals or make plans independently of others.  (AR 118–19.)

**B.      Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on August 13, 2015, and again on reconsideration on December 4, 2015.  (AR 126–30, 134–39.)  On December 18, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 140–41.)

On September 20, 2017, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions, with the assistance of a Hmong interpreter.  (AR 36–70.)  Plaintiff testified he had not driven for the past year due to his back pain and urination issues.  (AR 43.)  Plaintiff stated that he is taking medication for his lower back pain and that the pain medication causes him to have stomach aches and frequent urination.  (AR 56–57.)  Plaintiff testified that he also gets hemmorhoids which are very painful.  (AR 58.)  Plaintiff stated that he takes medications for his mental health, including stress and emotional problems.  (AR 59–60.)  Plaintiff stated he can only carry about half a gallon of milk and can only walk for about 30 minutes at the most.  (AR 60.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a hand packer, Dictionary of Occupational Titles (DOT) code 920.587-018, which was medium work with a specific vocational preparation (SVP)[5] of 2; and a farm worker, vegetable, DOT code 402.663-010, which was medium work with a SVP of 4. (AR 64.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with his work background. (AR 65.) The VE was also to assume this person was able to lift and carry 25 pounds frequently and 50 pounds occasionally, stand, walk, and sit for 6 hours out of an 8-hour workday, frequently climb ramps, stairs, balance, stoop, kneel, crouch, and crawl, and occasionally climb ladders, ropes and scaffolds. (AR 66.) The VE testified that such a person could perform Plaintiff's past relevant work. (AR 66.)

In a second hypothetical, the ALJ asked the VE to consider an individual with the limitations described in the first hypothetical except that the person could remember and understand simple instructions. (AR 67.) The VE testified that such a person could only perform Plaintiff's past work as a hand packer. (AR 67.) In a third hypothetical, the ALJ asked the VE to consider an individual with the limitations described in the first two hypotheticals except that the person can lift or carry 20 pounds frequently and 10 pounds occasionally, stand or walk 6 hours a day, and occasionally climb, stoop, crouch, crawl, balance, and kneel. (AR 66.) The VE testified that the person could perform the hand picker job as performed by Plaintiff. (AR 66.) In a fourth hypothetical, the ALJ asked the VE to consider an individual with the limitations in the third hypothetical except the person can remember and understand simple instructions. (AR 66.) The VE testified that the person could perform the hand picker job as performed by Plaintiff. (AR 66.) In a fifth hypothetical, the ALJ asked the VE to consider an individual with the limitations described in the fourth hypothetical except that the person would be off task 15 minutes per hour. (AR 66.) The VE testified that the person would not be able to perform any work. (AR 67.)

Plaintiff's counsel then asked the VE a sixth hypothetical, which consisted of the limitations described in the third hypothetical except that the person would be limited to occasional postural

[5] Specific vocational preparation (SVP), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

movements, stooping, crouching, crawling, and no more than occasional exposure to fast-moving machinery. (AR 67.) The VE testified the individual would be unable to perform Plaintiff's past relevant work and any other work. (AR 67.) In a seventh hypothetical, Plaintiff's counsel asked the VE to consider an individual with the same limitations in the sixth hypothetical except the person would not be able to speak or write English. (AR 67.) The VE testified that the person would not be able to perform any work. (AR 67.)

**C. The ALJ's Decision**

In a decision dated April 2, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 14–25.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 16–25.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since May 11, 2014, the alleged onset date (step one). (AR 16.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; depression; and chronic post-traumatic stress disorder ("PTSD"). (AR 16.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings (step three). (AR 17.)

The ALJ assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity … We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) except he can lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. Further, he can frequently climb ramps and stairs; frequently balance, stoop, kneel, crouch, and crawl; and occasionally climb ladders, ropes, or scaffolds. [Plaintiff] can also remember and understand simple instructions.

(AR 19.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 20.) At step five, the ALJ found that Plaintiff could perform past relevant work as a hand packer. (AR 23–24.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on February 15, 2019.  (AR 1–6.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

## III.    LEGAL STANDARD

### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or 'not disabled' at any

step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review …" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 (citations omitted) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.      DISCUSSION

Plaintiff contends that the ALJ erred in her evaluation of Dr. Parayno's opinion and Dr. Georgis's opinion, erred at step four by failing to resolve a conflict with the VE's testimony, and erred in finding that Plaintiff could perform his past relevant work as a hand packer.  (*See* Doc. 15 at 6–24.)  For the reasons stated below, the Court agrees with Plaintiff that the ALJ erred in her evaluation of Dr. Parayno's opinion, and will remand the case on that basis.

### A.      The ALJ Erred in Her Evaluation of Dr. Parayno's Opinion.

#### 1.      Legal Standard

The ALJ must consider and evaluate every medical opinion of record.  *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018).  In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician).  *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246

F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)).   The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual."  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.   An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).   In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence."  *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31.   "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.   *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001),[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

**2. Analysis**

Plaintiff alleges—and the record reflects—that Dr. Parayno was Plaintiff's treating psychiatrist. (*See* AR 373–521.) "If . . . a treating [physician's] opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *cf. Reddick*, 157 F.3d at 725 ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record." (citation omitted)). "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Commissioner] considers specified factors in determining the weight it will be given." *Id.* at 631. These factors include (1) the "[l]ength of the treatment relationship and the frequency of examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) the "[s]upportability" of the opinion;" (4) the "[c]onsistency" of the opinion "with the record as a whole;" (5) whether the opinion is from "a specialist about medical issues related to his or her area of specialty;" and (6) "any other factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c)(2)–(6).

Further, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830). *See also Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc. Sec.*,

528 F.3d 1194, 1198 (9th Cir. 2008)). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009))); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995))); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (noting that "inconsistencies and ambiguities" in a treating physician's opinion "represent specific and legitimate reasons for" rejecting the opinion). "The ALJ must do more than offer his conclusions." *Reddick*, 157 F.3d at 725. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Dr. Parayno treated Plaintiff from approximately 2010 through 2017. (*See, e.g.*, AR 373–521, 734–91.) As stated above, on August 5, 2016, Dr. Parayno submitted a medical source statement on behalf of Plaintiff in which he opined Plaintiff's psychological impairments precluded performance of most mental work functions for at least 10–15% of the day and would result in Plaintiff being absent from work two days per month. (*See* AR 728–31.)

In weighing Dr. Parayno's opinion, the ALJ stated:

> Little weight is given to the Mental Medical Source Statement completed by [Plaintiff's] treating physician Maximo Parayno, M.D. Dr. Parayno found [Plaintiff] would be precluded from performance of various mental abilities and aptitudes needed for unskilled work 10 percent of an eight-hour workday and he would be precluded from performance of mental abilities required for semi-skilled work for 15 percent of an eight-hour workday. He also indicated [Plaintiff] would be absent from work two days per month. This opinion is inconsistent with the treatment record, which showed that despite [Plaintiff's] depressed mood and symptoms affecting his memory and concentration, he received conservative medication treatment for his depression and post-traumatic stress disorder. The record does not contain evidence that would support the limitations assessed by Dr. Parayno. Notably, [Plaintiff] was

consistently found to have relevant thought content, fair judgment, and fair insight.

(AR 22) (internal citations omitted).

Although not explicitly stated by the ALJ, portions of Dr. Parayno's opinion were inconsistent with the opinions of the state agency physicians. (*Compare* AR 728–31 *with* AR 99–100, 118–19.) Thus, the ALJ was required to articulate "specific and legitimate" reasons, supported by substantial evidence, for rejecting Dr. Parayno's opinion. *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830.

The Court finds the ALJ failed to offer "specific and legitimate" reasons for rejecting Dr. Parayno's opinion.

**a. Conservative Treatment**

The ALJ's first reason—Plaintiff's allegedly conservative treatment—is insufficient. Although a conservative treatment plan can be the basis for rejecting a treating physician's medical opinion, the ALJ did not adequately explain why Plaintiff's treatment—which included consistent courses of psychiatric medications including antipsychotics and antidepressants, (*see, e.g.*, AR 372), and frequent mental health visits with Dr. Parayno and other professionals— was "conservative" or how Dr. Parayno's opinion regarding Plaintiff's mental limitations was undermined by such treatment. Further, not only did the ALJ not sufficiently explain her finding that Plaintiff's treatment was "conservative," it appears that Plaintiff's mental health treatment was in fact "anything but conservative." *Baker v. Astrue*, No. ED CV 09-1078 RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010) ("Where mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment"); *see also A.B. v. Saul*, Case No. 8:18-cv-00997-SHK, 2019 WL 6139163, at *8 (C.D. Cal. July 23, 2019) (collecting cases stating that treatment with antipsychotic or antidepressant medication does not qualify as "conservative" treatment); *Rice v. Colvin*, No. 2:15-cv-1763 DB, 2017 WL 85815, at *5 (E.D. Cal. Jan. 10, 2017) ("It is entirely unclear to the court how treatment with such medications could be characterized as conservative").

Thus, this reason is neither sufficiently "specific" nor "legitimate" to warrant rejection of Dr. Parayno's opinion.

**b. Inconsistency with Objective Medical Evidence**

The ALJ's second reason—inconsistency with the objective medical evidence—is similarly insufficient. The only specific aspect of the treatment record the ALJ cited to support rejecting Dr. Parayno's opinion for this reason was that Plaintiff was "consistently found to have relevant thought content, fair judgment, and fair insight." (AR 22.) However, while the ALJ cited some treatment records from Dr. Parayno and other professionals stating that Plaintiff had fair judgment and insight and relevant thought content, the ALJ failed to recognize and account for the fact that those same treatment records, and many other treatment notes, noted that Plaintiff was sleeping poorly, had poor memory, poor concentration/attention, depressed mood, blunted affect, and feelings of hopelessness/worthlessness. (*See, e.g.,* AR 375, 385, 388, 396, 702, 736, 752, 756.) Further, contrary to the ALJ's finding that Plaintiff was "consistently" found to have fair judgment and insight, Plaintiff was actually found to have poor or impaired judgment and insight at approximately 15 consecutive appointments. (AR 384, 395, 406, 408, 410, 411, 413, 414, 415, 418, 420, 422, 424, 425, 427, 428, 430.) In addition, many of the treatment notes that the ALJ cites are not in the context of mental status examinations by a treating psychiatrist, but rather general observations by other professionals in the context of physicals, appointments for medication refills, or other general and non-mental health specific appointments. (*See, e.g.*, AR 584, 590, 594, 598, 601, 605, 608.)

An ALJ may properly discount a treating physician's opinion that is inconsistent with the medical record, including his own treatment notes and the notes of other physicians. *See Valentine*, 574 F.3d at 692–93. However, an ALJ may not consider only evidence that supports a non-disability determination and disregard evidence that supports a finding of disability. *See, e.g., Holohan*, 246 F.3d at 1207 (finding that "the ALJ's specific reason for rejecting [a physician's] medical opinion [was] not supported by substantial evidence" because, in part, "the ALJ selectively relied on some

entries in [the plaintiff's] records . . . and ignored the many others that indicated continued, severe impairment"); *see also Reddick*, 157 F.3d at 722–23 (the ALJ may not "cherry pick" notes from the medical record to support a particular conclusion, but rather must evaluate the entire record in its proper context).  Here, the ALJ "cherry pick[ed]" certain portions of treatment notes stating that Plaintiff had relevant thought content and fair judgment, while ignoring the rest of the treatment notes stating that Plaintiff was functioning poorly in other areas.  *See id.*

Further, even if Plaintiff had fair judgment and relevant thought content at times, the Ninth Circuit has "emphasized while discussing mental health issues" that "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see also Holohan*, 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws.  That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").  Thus, the ALJ erred in rejecting Dr. Parayno's for this reason.

**B.      The ALJ's Error Was Not Harmless**

The Court now turns to the analysis of whether this error by the ALJ was harmless.  The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record).  As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

Here, the Commissioner does not contend that any error by the ALJ in evaluating Dr. Parayno's opinion was harmless, and the record establishes that the ALJ's error was not harmless. If the ALJ had properly evaluated Dr. Parayno's opinion and credited all or some of the functional mental limitations that Dr. Parayno opined, that may have changed the disability determination, as Dr. Parayno opined fairly significant limitations, including that Plaintiff would be precluded from performance of most functional activities for 10–15% of the day. (*See* AR 728–31.) Thus, the error was not "inconsequential to the ultimate nondisability determination," *see Molina*, 674 F.3d at 1115, and was not harmless.

**C. The ALJ's Error Warrants Remand for Further Proceedings**

The Commissioner requests that if the ALJ's decision is reversed, the Court remand the case to the Commissioner for further proceedings, as opposed to awarding benefits, and Plaintiff does not request that the Court direct an award of benefits. (*See* Doc. 16 at 29 n.15.)

Where the ALJ commits an error and that error is not harmless, the "ordinary … rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where

courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

Here, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because additional administrative proceedings would be useful. If the ALJ changes her evaluation of Dr. Parayno's opinion and credits all or some of the opinion, she should incorporate any warranted additional limitations in the RFC. Conversely, there may be specific and legitimate reasons the ALJ can offer for discounting the opinion. *See, e.g., Vaughn v. Berryhill*, 242 F. Supp. 3d 998, 1010 (E.D. Cal. Mar. 17, 2017) (remanding case for further proceedings where the ALJ erred in her evaluation of the medical opinions of plaintiff's treating physicians, "for the ALJ to properly consider and discuss the treating physicians' opinions," direct any "further medical evaluation . . . necessary," and re-formulate plaintiff's RFC). *Cf. Voisard v. Berryhill*, No. 2:17-CV-1023-EFB, 2018 WL 4488474, at *5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective testimony in this instance does not compel a finding that he is unable to do so.").

Even if the ALJ decides to credit as true some or all of Dr. Parayno's opinion and adjust her RFC determination for Plaintiff, the ALJ may still conclude that Plaintiff is not disabled--either

because he has the RFC to perform the requirements of his past relevant work or because he has the RFC to perform the requirements of other work that exists in significant numbers in the national economy. The ALJ may also elect to further develop the record, if deemed necessary.

The ALJ must also resolve an additional outstanding issue. The VE testified at the hearing that if a person with limitations similar to the limitations the ALJ found for Plaintiff was off task 15 minutes per hour, that person would not be able to perform any work. (AR 66–67.) Dr. Parayno opined that Plaintiff was impaired to the extent that he would be precluded from performance for at least 10% of the work day in many functional areas, and more than 15% of the work day in other functional areas. (*See* AR 729–30.) Thus, the ALJ must reconcile the findings of Dr. Parayno—that Plaintiff would be precluded from work performance in most functional areas for at least 48–72 minutes per 8-hour work day—with the VE's testimony that Plaintiff would be unable to perform any work in the national economy if he was off-task for 120 minutes per 8-hour workday. The ALJ should inquire of the VE whether a hypothetical individual with Plaintiff's limitations would be precluded from any work if they had the limitations opined by Dr. Parayno.

Further proceedings would therefore be useful to allow the ALJ to resolve these "outstanding issues" before a proper disability determination can be made. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). On remand, the ALJ should reevaluate the opinions of both Dr. Parayno and Dr. Georgis, and address any necessary changes to the RFC determination. The ALJ must also reevaluate her conclusions at Steps Four and Five of the disability determination in light of any changes to Plaintiff's RFC.

Based on the foregoing, the Court will remand this case for further proceedings.

**D. The Court Declines to Determine Plaintiff's Remaining Assertions of Error**

As the Court finds that remand is appropriate for the ALJ to reconsider Dr. Parayno's opinion, the Court does not determine Plaintiff's additional assertions of error regarding the ALJ's evaluation of Dr. Georgis's opinion or the ALJ's alleged errors at step four of the sequential

evaluation.  (*See* Doc. 15 at 14–24); *cf. Newton v. Colvin*, No. 2:13-cv-2458-GEB-EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments"); *Willmett ex rel. A.P. v. Astrue*, No. 2:10-cv-01201 KJN, 2011 WL 3816284, at *1 (E.D. Cal. Aug. 25, 2011) ("Because this legal error warrants remanding this matter for further proceedings, the undersigned does not reach the remainder of [the] plaintiff's arguments seeking reversal of the ALJ's and Appeals Council's decisions.").

## V.        CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Za Xiong Moua and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 3, 2020**                          /s/ *Sheila K. Oberto*
                                                        UNITED STATES MAGISTRATE JUDGE